An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-335

Filed 17 December 2025

Buncombe County, No. 24CV207703-100

HAROLD ROWELL and wife PAMELA ROWELL, Plaintiffs,

v.

ERIE INSURANCE and CENTRAL INSURANCE, Defendants.

Appeal by Plaintiffs from judgment entered 2 December 2024 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 25 September 2025.

> *Harold and Pamela Rowell, Plaintiffs–Appellants, pro se.*
>
> *McAngus Goudelock & Courie LLC, by Emily J. Erickson, for Defendant–Appellee Erie Insurance Group.*
>
> *Pinto Coates Kyre & Bowers, PLLC, by Adam L. White & Richard L. Pinto, for Defendant–Appellee Central Insurance Company.*

MURRY, Judge.

Harold and Pamela Rowell (Plaintiffs) appeal the trial court's order (1) granting Erie Insurance Group and Central Mutual Insurance Company's (collectively, "Defendants") motions to dismiss and (2) denying Plaintiffs' motion to amend their complaint. For the following reasons, we affirm the trial court.

## I.    Background

This matter arises from a motor-vehicle collision on 23 August 2021, in which Robert Holcombe struck Plaintiffs' vehicle after failing to adhere to a stop sign, resulting in a total loss of Plaintiffs' vehicle. First responders transported Ms. Rowell to Mission Hospital via ambulance. At the time, Plaintiffs held an insurance policy with Defendant Central Mutual Insurance Company (Central), which included coverage for liability, property damage, and underinsured and uninsured motorists. Mr. Holcombe held an insurance policy with Defendant Erie Insurance Group (Erie). Shortly after the collision, Mr. Rowell filed a claim with Central for the loss of their vehicle and paid a $500 deductible as required by the policy terms. On 8 September 2021, Central paid Plaintiffs for the loss of their vehicle. Central did not cover Ms. Rowell's medical expenses, including a hip and knee replacement. Instead, Central advised her "to wait a little while on the medical bills . . . to see what medical costs would be incurred." Upon receiving notice of Ms. Rowell's unpaid medical bills, Plaintiffs sent the medical bills to Erie, demanding payment or threatening legal action.

On 22 August 2024, the last day before the statute of limitations would run, Plaintiffs filed a complaint pro se, naming only Central and Erie as defendants. Plaintiffs' initial complaint asserted no specific cause of action and failed to name Holcombe as a defendant. Instead, the complaint recounted Plaintiffs' communications with both Central and Erie about their insurance policies and Ms.

Rowell's unpaid medical bills, alleging in relevant part:

7.  Plaintiff, [Mr. Rowell], contacted [Central] and . . . claimed the . . . car was a total loss. On [8 September 2021, Central] paid [P]laintiff for their car.

8.  Plaintiffs were advised by [Central's] agent . . . to wait a little while on the medical bills as . . . [Ms. Rowell] had been taken to the Mission hospital by Buncombe County EMS, to see what medical cost[s] would be incurred.

9.  . . . Since the accident, [Ms. Rowell] has had a hip replacement and a total knee replacement.

10. Plaintiffs received a letter from . . . [Erie], dated [17 September 2021], regarding a[n] Erie Insured, [Mr. Holcombe] . . . .

11. . . . [I]n recent months, [P]laintiff started receiving communications from debt collectors claiming [P]laintiff owed money for unpaid medical bills.

12. When [P]laintiff asked debt collectors to verify such debt, they produced a parcel statement from Mission Hospital and a statement from Buncombe County EMS dated back on [23 August 2021].

13. Plaintiff discovered that Mission Hospital and Buncombe County EMS had tried to file the claim themselves against an insurance company. Plaintiff asked the debt collector how they could do that if first, . . . [P]laintiff has never received any type of a bill for services rendered and secondly, how could they file a claim if they did not have the policy number or the claim number?

    **14.** Plaintiff sent [Erie] . . . an[ ] email, dated [6 August 2024], stating that [P]laintiff would seek legal action if the medical bills, which [P]laintiff ha[s] obtained so far, are not resolved and paid, including the five-hundred-dollar deductible which [P]laintiff had to pay to [Central] for the automobile loss claim.

On 19 September 2024, Central moved to dismiss Plaintiffs' complaint for

failure to state a claim under Rule 12(b)(6) and for failure to join a necessary party

under Rule 12(b)(7) of the North Carolina Rules of Civil Procedure. On 28 October 2024, Erie moved to dismiss on the same grounds. On 19 November 2024, Plaintiffs moved to amend their initial complaint but did not include a copy of the amended complaint or name Mr. Holcombe as a defendant. That same day, the trial court heard all three motions.

On 2 December 2024, the trial court entered an order granting Defendants' motions to dismiss with prejudice and denying Plaintiffs' motion to amend. As to Defendants' motions to dismiss, the trial court found that Plaintiffs "did not allege any wrongdoing, negligence, or other detrimental, illegal, or wrongful conduct on the part of either Defendant to this action." The trial court concluded that Plaintiffs "failed to allege any facts or causes of action that, taken as true, state a claim upon which relief may be granted." The trial court also found that Plaintiffs' failure to join Mr. Holcombe as a necessary party rendered both Erie and Central improper defendants. The trial court denied Plaintiffs' motion to amend, concluding that Plaintiffs were unable to amend their complaint to include Mr. Holcombe as a necessary party within the statute of limitations. Plaintiffs timely appealed.[1]

## II. Jurisdiction

This Court has jurisdiction under N.C.G.S. § 7A-27 because the trial court's

---

[1] On appeal, Plaintiffs' brief contains extraneous purported facts not present in their complaint or otherwise in the record on appeal. To the extent that these purported facts are not included in the record, we do not address them.

order is a final judgment of the superior court. *See* N.C.G.S. § 7A-27(b)(1) (2025).

### III.    Analysis

On appeal, Plaintiffs argue that the trial court erred by (1) granting Defendants' motions to dismiss[2] and (2) denying Plaintiffs' motion to amend. For the various reasons discussed below, we disagree on both counts and affirm the trial court in all material respects.

### A. Defendants' Motions to Dismiss

When reviewing a Rule 12(b)(6) dismissal *de novo*, *see Bridges v. Parrish*, 366 N.C. 539, 541 (2013) (citing N.C. R. Civ. P. 12(b)(6)), this Court treats the facial allegations of the complaint as true and in the light most favorable to the non-movant, *see Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). A complaint merits dismissal when its *prima facie* allegations cannot "state a claim upon which relief can be granted under some legal theory" as a matter of law. *Bridges*, 366 N.C. at 541 (quotation omitted). In other words, the trial court should grant a motion to dismiss "(1) when no law supports a plaintiff's claim; (2) when the complaint lacks allegations essential to make a good claim; or (3) when an allegation necessarily defeats the claim as a matter of law." *Jones v. J. Kim Hatcher Ins. Agencies*, 387 N.C. 489, 496 (2025) (citation modified). Our "system of notice pleading affords a sufficiently liberal

---

[2]    Because failure to state a claim under Rule 12(b)(6) is sufficient for dismissal, we need not address the merits of Defendants' Rule 12(b)(7) arguments, but do address Plaintiffs' failure to join Mr. Holcombe as a necessary party throughout as it pertains to our Rule 12(b)(6) analysis.

construction of complaints so that few fail to survive [a] motion to dismiss." *Button v. Level Four Orthotics & Prosthetics*, 380 N.C. 459, 467 (2022). A plaintiff must allege more than "bare legal conclusions or unwarranted deductions of fact" "to meet the essential elements of a claim." *Mauck v. Cherry Oil Co.,* 921 S.E.2d 109, 116 (N.C. 2025) (quotation omitted). He "must satisfy the requirements of the substantive law which gives rise to the pleadings.*" Alamance Cty. v. N.C. Dep't of Hum. Res.*, 58 N.C. App. 748, 750 (1982) (quotation omitted).

Plaintiffs argue that the trial court erred by granting Defendants' motions to dismiss because Mr. Holcombe's "name is scattered throughout the complaint and record on appeal"; thus, "he should have known that he [wa]s part of this claim." For the following reasons, we disagree and affirm the trial court.

### 1. Central

Because the uninsured motorist insurance carrier derives its contractual obligations and liabilities to the insured from the at-fault driver's own liabilities, *see Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 294 (1989), the insured cannot sue the carrier without initial judgment against that at-fault individual, *see Grimsley v. Nelson*, 342 N.C. 542, 548 (1995). But an uninsured-motorist insurance carrier is obligated only "to pay any judgment entered against" the at-fault driver. Because the "plaintiff's right to recover against his . . . insurer under the uninsured motorist endorsement is derivative and conditional," it "does not attach until a valid judgment is obtained against an uninsured motorist." *Id.* at 547 (quotation omitted); *see*

N.C.G.S. § 20-279.21(b)(3)(a).

As Plaintiffs' automobile insurance carrier, Central's policy included coverage for liability, property damage, and underinsured and uninsured-motorist claims. Here, the complaint alleges that Central (1) insured Plaintiffs, (2) paid for their vehicle as part of their property-damage coverage, (3) required them to pay their $500 deductible as part of that policy, and (4) advised them to wait to determine their total medical costs. In short, Plaintiffs' allegations showed that Central provided property-damage coverage in accordance with its policy. Thus, Central's only potential contractual obligations to Plaintiffs fall under its uninsured-motorist coverage.

Because Central's liability as an uninsured-motorist carrier derives from Mr. Holcombe's liability, though, Plaintiffs cannot proceed without either obtaining a judgment against Holcombe or joining him as a necessary party. Their failure to name Holcombe as a party to this action thus relieves Central of any potential obligations as Plaintiffs' underinsured-motorist carrier. Accordingly, Plaintiffs lack any procedural mechanism to trigger Central's underinsured motorist coverage. *See Grimsley*, 342 N.C. at 547. Plaintiffs' complaint fails to state a claim upon which relief can be granted against Central because Plaintiffs (1) failed to allege any wrongdoing, breach of contract, or duties by Central to Plaintiffs; and (2) omitted of a necessary party. Thus, the trial court properly dismissed the complaint against Central. *See* N.C. R. Civ. P. 12(b)(6)–(7).

## 2. *Erie*

Likewise, a third party cannot sue the insurance company of another in a direct, private cause of action. *See Wilson v. Wilson*, 121 N.C. App. 662, 667 (1996) (affirming Rule 12(b)(6) dismissal lacking "precedent . . . allowing a third-party to sue the insurance company of another."). But if a trial court has entered a judgment regarding the insured's liability, then the injured person may maintain a third-party beneficiary action on the insured's liability insurance policy. *See Craven v. Demidovich*, 172 N.C. App. 340, 342 (2005). Here, Plaintiffs sued Erie without having first obtained a judgment against Holcombe. Because we cannot recognize Plaintiffs' claims "prior to a judicial determination of the insured's liability, the complaint demonstrates, without question, that no set of facts can be established which would entitle [Plaintiffs] to relief." *Id.* at 343. Thus, the trial court properly dismissed Plaintiffs' complaint against Erie. *See* N.C. R. Civ. P. 12(b)(6)–(7).

### B. **Plaintiffs' Motion to Amend**

Next, Plaintiffs argue that the trial court erred by denying their motion to amend their initial complaint, because "it appears to Plaintiffs the trial court did not entertain their motion and may have concluded the motion was out of the statute [of] limitations." For the following reasons, we disagree and affirm the trial court.

This Court reviews denials of motions to amend for abuse of discretion. *See Estate of Rivas v. Fred Smith Constr., Inc.*, 258 N.C. App. 13, 19 (2018). Under Rule 15, a plaintiff may "amend his pleading once as a matter of course at any time before

a responsive pleading is served," or "by leave of court," which the trial court "shall . . . freely give[ ] when justice so requires." N.C. R. Civ. P. 15(a). But justice does not require a trial court to grant leave to amend when amendment would be futile. *See Estate of Rivas*, 258 N.C. App. at 19. An amendment is futile when "the facts alleged in a proposed amendment would not state a claim for relief," including when such amended claim would be barred by the statute of limitations. *City of Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 347–48 (1994); s*ee* N.C. R. Civ. P. 15(a).

Nonetheless, Rule 15 provides an exception under which a party may amend a complaint after the statute of limitations has run if the amendment "relates back" to the initial complaint; the amendment is then treated as if it were filed on the same day as the initial complaint. N.C. R. Civ. P. 15. But the original pleading cannot relate back if it "does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." *Id.* 15(c). For instance, the relation-back rule may apply to correct a "misnomer" but not where it "has the effect of adding a new party to the action." *Bob Killian Tire, Inc. v. Day Enters.*, 131 N.C. App. 330, 331 (1998); *see Estate of Rivas*, 258 N.C. App. at 19 (characterizing misnomer as a "mistake in name," such as "giving an incorrect name to the person" in pleading); *e.g.*, *Franklin v. Winn Dixie Raleigh, Inc.*, 117 N.C. App. 28 (1994) (holding that substituting "Winn-Dixie Raleigh, Inc." for "Winn-Dixie Stores, Inc." did not relate back because the two were separate entities). Thus, an amendment adding a new defendant "amounts to a new and independent cause of

action" and is barred once "the statute of limitations has run." *Bailey v. Handee Hugo's, Inc.*, 173 N.C. App. 723, 726 (2005). Further, North Carolina subjects personal injury claims to a three-year statute of limitations that commences when the claimant's injury "becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C.G.S. § 1-52(16).

Here, Plaintiffs filed their complaint on 22 August 2024, one day before the expiration of the three-year statute of limitations. They moved to amend on 19 November 2024, well after the statute of limitations expired. *See id.* Accordingly, any amendment must relate back to the initial pleading to avoid a time bar. *See* N.C. R. Civ. P. 15; *Simpson v. Hatteras Island Gallery Restaurant*, 109 N.C. App. 314, 325 (1993). Plaintiffs' amendment sought to add Holcombe as a new party, which would not relate back under Rule 15 because doing so would have created a new action outside the three-year statute of limitations. As a result, the trial court's denial of Plaintiffs' motion to amend was a sound and reasoned decision. Ultimately, the trial court properly concluded that Plaintiffs could not bring an action against Central and Erie without also bringing an action against Holcombe. Because Plaintiffs could not proceed without making a time-barred amendment to their complaint, the trial court properly dismissed Plaintiffs' complaint and denied Plaintiffs' motion to amend.

## IV.   Conclusion

For the reasons above, this Court holds that the trial court did not err in granting Defendants' motions to dismiss and denying Plaintiffs' motion to amend.

- 10 -

AFFIRMED.

Chief Judge DILLON and Judge GRIFFIN concur.

Report per Rule 30(e)